**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| HARDWARE PLUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OMNIMAX INTERNATIONAL, LLC. (formerly known as Euramax International, Inc.); EURAMAX CANADA, INC.; TRUE VALUE COMPANY, LLC, and ACE HARDWARE CORPORATION, <br><br> Defendants. | CIVIL NO. <br><br> DECLARATORY JUDGMENT; IMPAIRMENT OF CONTRACT IN VIOLATION OF LAW 75; BREACH OF CONTRACT; BREACH OF FIDUCIARY DUTIES AND OF COVENANT OF GOOD FAITH AND FAIR DEALING; TORTIOUS INTERFERENCE WITH CONTRACT, and VIOLATIONS OF THE PUERTO RICO ANTI–MONOPOLY ACT. <br><br> <u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Plaintiff Hardware Plus, Inc. (hereinafter, "plaintiff" or "HP") through counsel, alleges, complains, and prays as follows:

**I.      <u>NATURE OF ACTION</u>**

1. This diversity of citizenship action against defendant OmniMax International, LLC, formerly known as Euramax International Inc. (hereinafter "OmniMax") and Euramax Canada Inc. ("Euramax", jointly with OmniMax "Principal"), under Puerto Rico's Dealers Act, Law No. 75 of June 24, 1964, 10 P.R. Laws Ann. § 278 *et seq*. ("Law 75"), the Puerto Rico Anti–Monopoly Act, 10 P.R. Laws Ann. § 263 (the Puerto Rican counterpart of the Robinson–Patman Act) for price discrimination, and the Puerto Rico Civil Code, arises from defendants' impairment of plaintiff's exclusive rights under a distribution agreement executed between GSW Thermoplatics Company ("GSW"), OmniMax, and plaintiff in 1994, and the established relationship for the sale and distribution of certain Euramax gutter products (the "Dealer Contract").

1

2. Co-defendants True Value Company, LLC ("True Value"), and Ace Hardware Corporation, ("Ace", collectively hereinafter, the "Unauthorized Distributors") are also liable to HP for their tortious interference with HP's exclusivity rights over the Euramax snap seal gutter systems (hereinafter, the "Products"), since they have sold these products to retailers and customers in Puerto Rico with knowledge of the existence of the exclusivity rights of HP.

3. Plaintiff seeks a judgment, pursuant to Fed.R.Civ.P.57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring that plaintiff is the sole and exclusive distributor in Puerto Rico of the *Products*, and entitled to sell these in plaintiff's Island-wide distribution network in Puerto Rico. In addition, HP seeks permanent injunctive relief, treble damages under the Puerto Rico Anti–Monopoly Act, 10 P.R. Laws Ann. § 268(a) and compensatory damages for wrongful impairment of the *Dealer Contract*, breach of contract, tortious interference, and breach of fiduciary duties and of the covenant of good faith and fair dealings.

## II.     PARTIES

4. Plaintiff HP is a corporation organized and existing under the laws of Puerto Rico, with its principal place of business in RD #1 Km 29.3 Sector Río Cañas, Caguas PR 00725. Plaintiff's postal address is 10773 Caparra Station San Juan, PR 00922.

5. HP is a Puerto Rican company dedicated to the distribution of wholesale hardware products in Puerto Rico and the Caribbean.

6. OmniMax is a corporation duly registered in the State of Georgia dedicated to the manufacturing of building products with address in 30 Technology Parkway South, Suite 400: Peachtree Corners, GA 30092.

7. Euramax is a wholly owned subsidiary of OmniMax, dedicated to the manufacturing of exterior building products, including snap-seal gutter systems (as previously

defined, the "Products". Euramax is registered in Quebec, Canada with its main offices located at 26 Lorena Street Barrie, ON L4N 4P4, CA.

8. Co-defendant True Value is a Delaware corporation with its principal place of business in Chicago, Illinois. True Value is a national cooperative that acts as a wholesaler for True Value Hardware stores, marketing its merchandise and services exclusively to its members, including True Value Hardware stores in Puerto Rico. Its principal place of business is located at 8600 West Bryn Mawr Avenue Chicago, Illinois 60631-3505, United States.

9. Co-defendant Ace Hardware is a Delaware corporation with its principal place of business in 2200 Kensington Ct, Oak Brook, IL 60523, United States. Ace is a national cooperative that acts as a wholesaler for Ace Hardware stores, marketing its merchandise and services exclusively to its members, including Ace Hardware stores in Puerto Rico.

### III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount-in-controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

11. This Court has personal jurisdiction over defendants because they have been doing business with plaintiff and/or conducted substantial business in Puerto Rico within the time period relevant to the causes of action stated herein.

12. Venue in this Court is proper under 28 U.S.C. § 1391(a), because the events or omissions giving rise to plaintiff's claims occurred in this judicial district, and defendants are subject to personal jurisdiction in this district.

## IV. FACTS COMMON TO ALL CLAIMS

**The Business Relationship and the Dealer Contract**

13. Prior to year 1994 GSW attempted to enter into the market in Puerto Rican with its gutter system products. The company was unsuccessful in doing so, which led GSW to engage in negotiations with HP for an exclusive distribution relationship on the Island.

14. Thereafter, on or about March 2, 1994, GSW, as principal, and HP, as dealer, entered into the *Dealer Contract*, whereby HP would act as GSW's *exclusive* distributor for the territory of Puerto Rico of their line of snap seal gutter systems, the *Products*. A copy of the *Dealer Contract* is attached hereto and made part of hereof as **Exhibit A**.

15. Pursuant to the *Dealer Contract*, HP is the *exclusive* wholesaler of Principal in Puerto Rico, and pursuant to the terms of the agreement, Principal cannot, "recruit or authorize any agents to market [the Products] in Puerto Rico." *See* **Exhibit A**.

16. Upon information and belief, on or December 2006, and while the *Dealer Contract* was in full force and effect, GSW was acquired by Euramax International Inc, now known as co-defendant OmniMax, the latter thus becoming GSW's successor to the *Dealer Contract*.

17. HP purchases from Principal the *Products* for the sale to retail markets, warehouses and through its sales force and infrastructure distributes them on an exclusive basis in retail businesses in Puerto Rico.

18. Since the acquisition of GSW, OmniMax has assumed the obligations of the principal under the *Dealer Contract*. Therefore, the *Dealer Contract* executed between GSW and HP, and the established course of conduct, governs the contractual relationship between Principal and plaintiff to this day.

**The Development of the Market by HP and Market Presence of the *Products***

19. Since the execution of the *Dealer Contract* and the parties' established relationship, HP has been a tireless promoter of the *Products* in Puerto Rico and created a substantial and healthy market and a name for the *Products*, which were otherwise unknown in this market.

20. The *Products* were not sold in Puerto Rico prior to the *Dealer Contract* and HP's business relation with Principal and its predecessor.

21. HP has opened and developed, on a constant business, the retail business for the *Products* in Puerto Rico, has assumed the credit risks for said sales, promotes and concludes sales contracts with the various retail clients that HP has developed for Principal's business in Puerto Rico over the course of almost 30 years.

22. The salesmanship, investments and efforts of HP paid off, with almost steadily increasing revenues for the *Products* in the Puerto Rico market.

23. From the execution of the *Dealer Contract*, through the present time, HP has placed numerous purchase orders for the *Products*, maintained an inventory in its warehouse, sold and distributed the *Products* to retail businesses, invested in advertising, price promotions and event promotions of the *Products*, taken risks in the sale of the *Products*, including collection of amounts due from customers, and provided merchandise services to customers; all of which contributed to the current and undeniable increasing demand, and acceptance of the *Products* by consumers in Puerto Rico.

24. Plaintiff has developed and contributed to the goodwill of Principal's products by continuously distributing the *Products* in Puerto Rico for close to 30 years, being the sole and *exclusive* dealer of the *Products*, servicing the line to customers in Puerto Rico, developing a

healthy and favorable market, enhancing the position of the brand in this market, and establishing consumer acceptance, recognition, and demand for the *Products*.

25. To this day, HP has purchased over eight (8) million dollars in *Products* from Principal.

26. As a direct and proximate result of these efforts, HP developed a clientele for the *Products*, including local hardware stores, retailer-owned wholesale hardware cooperatives such as True Value, Ace Value, Orgill, Do it Best, national retail home improvement chains such as Home Depot and other retailers.

27. HP currently services the market, through its direct sales force across the Island.

28. HP has always exercised its best efforts to maximize sales and invested in the development and maintenance of a solid market for the *Products* in Puerto Rico.

29. The distribution and sale of the *Products* are an essential component of the established relationship between HP and Principal and of HP's overall business and operations.

30. The *Products* represent an important portion of HP's distribution business in Puerto Rico.

31. In 2010, however, Principal informed HP that as part of its commercial relationship with Home Depot in the continental United States, it would supply the *Products* <u>directly</u> to Home Depot stores in Puerto Rico.

32. HP strenuously objected and, on September 1st, 2010, filed a lawsuit against its Principal in the Puerto Rico Court of First Instance, San Juan Part, Superior Court, for declaratory judgment and damages under Law 75 and tortious interference with contract.

33. The parties eventually compromised, and pursuant to HP exclusivity rights over the territory of Puerto Rico, Principal acknowledged that <u>all</u> purchase orders for *Products* destined for

sale to Home Depot stores in Puerto Rico were to be placed through Principal to be sold, distributed and processed, however, directly through HP.

**Impairment of the Dealer Contract and the Established Exclusive Distribution Relationship.**

34. Plaintiff has complied with its essential obligations, and at all relevant times has been a loyal and dedicated distributor of the *Products* in Puerto Rico.

35. The *Dealer Contract* remains in full force and effect and currently governs the established relationship between HP and Principal.

36. Recently, however, Principal has knowingly breached the *Dealer Contract* infringing the exclusivity arrangement by supplying the *Products* to wholesalers and/or distributors in the continental US with full knowledge that these entities are marketing and reselling the *Products* in Puerto Rico; thus, willfully circumventing the *Dealer Contract*.

37. On or about June 2022, Plaintiff discovered that the *Products* were being supplied and sold in Puerto Rico in multiple local True Value, ACE Hardware cooperative members, partners and/or affiliates in violation of the *Dealer Contract*.

38. HP discovered that in direct and clear violation of the exclusive distribution relationship, and in violation of Law 75, Principal supplies, and sales the *Products* to the *Unauthorized Distributors*, knowing that the *Products* would be sold at their partners and/or affiliates stores in Puerto Rico, bypassing; therefore, HP as an exclusive distributor of the *Products* in the Island.

39. Even worse, HP also discovered that Principal was selling the *Products* to the *Unauthorized Distributors* at much lower prices than those offered to HP for resale.

40. HP has since learned that Principal has engaged in a pattern of conduct of providing the *Unauthorized Distributors* preferential pricing in the relevant market for the same identical

products, some are even sold to the *Unauthorized Distributors* at a cost 74% below the prices simultaneously quoted and sold to HP for identical commodities.

41. As a direct result of the preferential pricing Principal provided to the *Unauthorized Distributors* in the relevant market, who in turn are selling the *Products* in the Puerto Rico territory, Principal gave these entities an unfair and competitive advantage over HP.

42. This competitive advantage enabled the *Unauthorized Distributors* to offer lower quotations than HP to local retailers. Consequently, sales and profits have been diverted from HP to the favored purchasers, the *Unauthorized Distributors*, causing economic harm to HP.

43. For this reason, on June 28, 2022, HP sent an email to OmniMax informing of the discovery of an unlawful distribution of *Products* in the territory and the discriminatory pricing; thus, requesting Principal to take affirmative action to avoid further violations to the *Dealer Contract*. A copy of the communication is attached hereto and made part hereof as **Exhibit B**.

44. On July 13, 2023, OmniMax responded by email acknowledging the existence and validity of the *Dealer Contract*, but dismissively stating that it has a business relationship with True Value and ACE in the continental U.S. and had no control on how these entities then distribute the *Products* to other dealer groups or to their stores in Puerto Rico. A copy of the communication is attached hereto and made part hereof as **Exhibit C.**

45. On July 19, 2022, HP responded by email stating that Principal has always acknowledged HP's exclusivity in the territory even when encountered with clients in the continental U.S., such as Home Depot. Furthermore, as Principal it had a responsibility to be watchful against infringers, more so when given notice of the unlawful conduct. Thus, HP demanded Principal to communicate to the *Unauthorized Distributors* of the *Dealer Contract* and

to demand that they cease all transactions of the *Products* in HP's territory. A copy of the communication is attached hereto and made part hereof as **Exhibit D.**

46.     Despite various follow ups, Principal failed to address HP's arguments in its July 19th email.

47.     On September 1, 2022, HP sent a letter reminding Principal of its obligations under Law 75, thereby stressing its legal duty to, once being put on notice of the infringing activity, take prompt positive action to curtail the practice and the continuing violation of the HP's exclusive rights. A copy of the communication is attached hereto and made part hereof as **Exhibit E.**

48.     In its September 1st letter, HP reiterated its demand for Principal to take action, namely to: (i) immediately take all necessary steps for any third party including, but not limited to the *Unauthorized Distributors*, to cease and desist from offering for sale and/or selling the *Products* in Puerto Rico; and (2) to specify what additional measures are to be taken by Principal to prevent HP from incurring into further economic loss. A copy of the communication is attached hereto and made part hereof as **Exhibit F.**

49.     Undeterred, through counsel, OmniMax responded to HP's letter on October 26, 2022, rejecting having any affirmative duty to act or prevent purchases outside of Puerto Rico by continental U.S. wholesalers which might also have stores in Puerto Rico like some of the *Unauthorized Distributors* do. And, failing to address HP's claims on preferential pricing and economic harm. A copy of the communication is attached hereto and made part hereof as **Exhibit G.**

50.     Principal has continued to supply and sell the *Products* to the *Unauthorized Distributors* well aware that these groups are reselling and distributing the *Products* in Puerto Rico; thus, willingly and knowingly circumventing the exclusivity agreement with HP.

51. Likewise, upon information and belief, Principal continues to sell the *Products* to *Unauthorized Distributors* for its resale in Puerto Rico at prices well below those currently offered to HP for the same commodities.

52. The *Unauthorized Distributors* are liable to HP for its tortious interference with HP's exclusive rights over the *Products* since they have sold the goods to retailers in Puerto Rico, with knowledge of HP's exclusive rights.

53. The *Unauthorized Distributors*, acting in concert with Principal, have practically appropriated HP's clientele, and the goodwill created by it for the *Products*, impairing and constructively terminating HP's exclusive distribution rights.

## V.    CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION
### Declaratory Judgment

54. Plaintiff incorporates by reference the preceding factual allegations as though if fully set forth herein.

55. The Declaratory Judgment Act provides, in part, that "in case within a jurisdiction […] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S. Code § 2201.

56. This Court has the power to grant the relief requested in this action because an actual controversy exists between HP and Principal as to the nature of the distribution relationship established in the *Dealer Contract* and confirmed by the course of conduct of the parties.

57. As such, Plaintiff hereby requests this Honorable Court to enter Judgment declaring that HP is the sole and *exclusive* distributor of *Products* in Puerto Rico and a protected distributor within the context of Law 75.

58. As such, Plaintiff has a right to continue to sell the *Products* in Puerto Rico, on an exclusive basis.

59. The actions and omissions by Principal of failing to take affirmative actions to prevent the sale of its *Products* in Puerto Rico and, instead, selling its products directly or indirectly to third parties for use or resale in Puerto Rico, at prices substantially lower than those offered to HP constitute a clear violation of Law 75.

60. HP requests that this Honorable Court issue a Declaratory Judgment to that effect, establishing that Principal's conduct constitutes a violation of Law 75.

### B. <u>SECOND CAUSE OF ACTION</u>
**Impairment of the *Dealer Contract* in violation of Law 75**

61. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

62. The established relationship between HP and Principal constitutes a contract governed by Law 75. Therefore, Plaintiff´s exclusive distribution rights are protected by Law 75.

63. Law 75 protects against impairments of rights acquired under a dealership agreement.

64. Pursuant to the *Dealer Contract*, HP is the exclusive distributor of the *Products* on the Island and Principal could not recruit nor authorize any agents to market the *Products* in the territory.

65. The acts and omissions of Principal deprive HP of the exclusive representation in Puerto Rico of the *Products*, which it has the contractual right to protect.

66. Principal has established a relationship with the *Unauthorized Distributors* in the continental U.S. selling these entities *Products,* knowing that they conduct business in Puerto Rico and that the *Products* would end up in the Island, contrary to the existing *Dealer Contact*.

67. Principal has failed to take any affirmative action to cease the infringing conduct despite being advised of its obligations as Principal under Law 75.

68. In addition, due to price discrimination to which HP has been subjected, and which has been implemented by Principal to favor the *Unauthorized Distributors*, HP has lost sales.

69. If Principal had sold HP the *Products* at the prices at which it sold them to the *Unauthorized Distributors* for resale in Puerto Rico, HP would have generated more sales than it did by having to compete with the *Unauthorized Distributors*, who are selling the *Products* at to retailers in the Island at much lower prices.

70. Had HP sold the *Products* at the prices at which it sold them to the *Unauthorized Distributors*, HP would have generated a larger income.

71. Plaintiff is the ultimate victim of Principal's unlawful conduct. HP has been and will continue to be injured in its money and property in an amount to be determined at trial, but estimated at no less than **five hundred thousand ($500,000.00)** dollars.

## C. THIRD CAUSE OF ACTION
**Damages for Breach of Contract**

72. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

73. The *Dealer Contract*, including the course of performance of the parties until Principal's breach, constitutes a valid and binding contract governed by the Puerto Rico Civil Code.

74. The acts and omissions of Principal have caused damage to HP consisting, among others, of damage to its commercial reputation, loss of goodwill, loss of past and future income.

75. The past and future damage caused to HP are estimated in an amount to be determined at trial, but not less than **five hundred thousand ($500,000.00)** dollars.

### D. FOURTH CLAIM FOR RELIEF:
### Bad Faith, Negligence, Breach Fiduciary Duties and of Covenant of Good Faith and Fair Dealing

76. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

77. Principal has been negligent and has acted in bad faith and with *dolus* or deceit in the performance of its obligations under the *Dealer Contract* and breached its fiduciary duties to HP under Puerto Rico civil law by, refusing to take any action against the *Unauthorized Distributors* to ensure that the direct sales to Puerto Rico would cease and avoid further interference with the Puerto Rico market.

78. Principal has been alerted that the *Unauthorized Distributors* are making the *Products* available to the Puerto Rico retail market via direct sales to retailers in the Island, but despite being informed of the illegal practice, it has denied responsibility and failed to take prompt positive action to curtail the practice.

79. Principal's omission in failing to take positive action to HP's complaints have impaired the exclusive distribution provision of the *Dealer Contract*. In so doing, Principal also breached its duty of good faith and fair dealing in the performance of its contractual obligations.

80. As a direct and proximate result of Principal's bad faith, deceit, breach of fiduciary duties, negligence, and breach of its duty of good faith and fair dealing, HP has been forced to incur and will continue to incur in additional, reasonably foreseeable, consequential damages, including, but not limited to, the cost of attorney's fees and other expenses in prosecuting this action, lost profits, loss of goodwill, and lost business opportunities, or other actual damages,

13

which exceed **five hundred thousand ($500,000.00)** dollars, or such amount to be established at the jury trial, plus interest, cost, expenses attorney's fees and expert witness fees.

### E. FIFTH CAUSE OF ACTION
**Discriminatory Pricing under Puerto Rico Anti–Monopoly Act,
10 P.R. Laws Ann. § 263**

81. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

82. Principal engages in discriminatory activities with respect to HP in the relevant market by giving preferential pricing to the *Unauthorized Distributors* over HP. Principal sold identical gutter products to the *Unauthorized Distributors* knowingly that they would be resold in *Unauthorized Distributors'* clients and/or member stores, including those located in Puerto Rico.

83. Principal, on a systematic and recurring basis, has violated the Puerto Rico Monopoly Act by selling the *Unauthorized Distributors* the *Products* at prices significantly less than those at which HP is being charged.

84. Principal's actions resulted in HP being unable to offer competitive quotes against the *Unauthorized Distributors* who sale products to clients and/or member stores in the Island.

85. HP has lost sales since *Unauthorized Distributors'* member stores that previously purchased the *Products* from HP are now acquiring the *Products* directly from the *Unauthorized Distributors* at significantly prices below those offered by HP.

86. As a direct and proximate result of Principal's conduct, which violated the provisions of the Puerto Rico Monopoly Act, HP suffered damages for which it has not been compensated at an amount to be determined at trial.

### F.  SIXTH CAUSE OF ACTION
#### Against *Unauthorized Distributors* for Tortious Interference

87. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

88. The *Unauthorized Distributors* were aware of the contractual relationship of exclusive distribution that existed between Principal and HP concerning the *Products*.

89. The actions and omissions of the *Unauthorized Distributors* by continuing to sell the *Products* in Puerto Rico, despite of knowing of the relationship protected by Law 75, constitute tortious interference with the contractual relationship between HP and Principal.

90. The tortious interference of the *Unauthorized Distributors* has caused and will cause damage to HP.

91. The damages that the tortious interference has caused and will cause to HP are estimated in an amount of not less than **two hundred thousand ($200,000.00) dollars**.

### PERMANENT INJUNCTION

92. HP incorporates by reference all the foregoing paragraphs as though set forth fully herein.

93. In addition to monetary damages and other relief sought herein, Plaintiff makes a petition to the district court for entry of a permanent injunction against defendants, its successor and any and all persons acting on their behalf prohibiting them, under penalty of contempt, from doing any act in violation of HP's exclusive rights as found by this Court and requiring strict compliance with the terms of the *Dealer Contract*.

### JURY DEMAND

94. Plaintiff hereby demands a trial by jury on all issues triable to a jury.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, on its Claims for Relief, Plaintiff HP respectfully requests that this Court enter a judgment against defendants as follows:

A. Declaring that HP is the sole and exclusive distributor of the *Product* in Puerto Rico, protected under Law 75, and is entitled to sell on an exclusive basis the *Products* in the Island, as it has always done;

B. Awarding monetary damages under Sections 278 (c) and (d) of Law 75 in excess of **five hundred thousand ($500,000.00)**, as a result of Principal's acts of impairment of HP's contractually-acquired rights under the *Dealer Contract*;

C. Awarding monetary sustained by HP as a result of Principal's breach of contract, in an amount no less than **five hundred thousand ($500,000.00)**, plus pre-judgment interest according to law;

D. Awarding monetary and consequential damages sustained by HP as a result of Principal's negligence, deceit, and bad faith in the performance of its contractual obligations and its breach of the covenant of good faith and fair dealing, in an amount no less than **five hundred thousand ($500,000.00)**, plus pre-judgment interest according to law;

E. Awarding monetary and consequential damages under the Puerto Rico Anti–Monopoly Act, 10 P.R. Laws Ann. §268(a);

F. Declaring that the *Unauthorized Distributors* are liable to HP for their tortious interference with HP's exclusive rights to the *Products*, awarding damages in an amount no less than **two hundred thousand ($200,000.00)** dollars;

G. Permanently enjoining defendants from acting in violation of HP's exclusive rights under the *Dealer Contract*;

H.  Awarding costs and expenses incurred by HP in prosecuting this action, plus attorney's fees and expert witness fees; and

I.       Awarding such other relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 3rd day of August 2023.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
*Counsel for Plaintiff*
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel. 787.756.9000
Fax. 787.756.9010
Email: epo@amgprlaw.com
acasellas@amgprlaw.com


By: *s/Eric Pérez-Ochoa*
ERIC PÉREZ-OCHOA
USDC No. 206314


*s/Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC No. 301010