IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HARDWARE PLUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OMNIMAX INTERNATIONAL, LLC., et al., <br><br> Defendants. | CIVIL NO.: 23-1394 (MEL) |

**OPINION & ORDER**

**I.  INTRODUCTION**

Pending before the court are two motions to dismiss Hardware Plus, Inc.'s ("Plaintiff" or "HP") amended complaint by True Value Company, LLC ("True Value") and Ace Hardware International Holdings, Ltd. ("Ace"). ECF Nos. 43, 85.  First, True Value filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Plaintiff has failed to establish subject matter jurisdiction and failed to state a claim upon which relief can be granted. ECF No. 43. Plaintiff filed its opposition to True Value's motion to dismiss on December 29, 2023. ECF No. 44. Thereafter, True Value filed a reply, and Plaintiff filed a surreply. ECF Nos. 55, 68. Second, Ace moves the court to dismiss all claims against it under Fed. R. Civ. P 12(b)(6). ECF No. 85. Plaintiff responded to said motion on April 4, 2024. ECF No. 100. Ace replied. ECF No. 115. For the reasons addressed below, True Value's motion to dismiss (ECF No. 43) is GRANTED and Ace's motion to dismiss (ECF No. 85) is DENIED.

**II.    SUMMARY OF THE ALLEGATIONS**[1]

HP is a Puerto Rico based company that distributes wholesale hardware products in Puerto Rico and the Caribbean. ECF No. 35 at ¶ 5. On or about March 2, 1994, GSW Thermoplastics Company ("GSW") and Plaintiff entered into a contract (the "Dealer Contract") where Plaintiff would act as GSW's exclusive distributor for GSW's line of snap seal gutter systems (the "Products") in Puerto Rico. *Id*. at ¶ 14. The Dealer Contract was memorialized via letter and states in its pertinent part: "This letter will confirm our telephone conversation making [Plaintiff] our exclusive wholesaler in Puerto Rico. Additionally, we will not recruit, or authorize any agents to market [the Products] in Puerto Rico." ECF No. 35-1. In or about December 2006, while the Dealer Contract was in effect, Euramax International Inc. acquired GSW. *Id*. at ¶ 16. Euramax International Inc. is now known as OmniMax International, LLC ("OmniMax"). *Id.* At the present, the Products are manufactured by Euramax Canada Inc. ("Euramax"), a wholly owned subsidiary of OmniMax.[2]  *Id*. at ¶¶ 7, 20.

HP has distributed the Products in Puerto Rico for approximately 30 years under the Dealer Contract, which is still in effect today. *Id*. at ¶¶ 21–22, 39. Plaintiff's efforts over the years

---

[1] Unless indicated otherwise, this summary is based on Plaintiff's allegations in the complaint, the content of which must be accepted as true at this stage of the proceedings, to the extent that the allegations are not speculative or conclusory. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

[2] Plaintiff defines "Principal" as both OmniMax and Euramax, despite the fact that Plaintiff does not explicitly mention Euramax in paragraphs 16 and 19 of the amended complaint, where it alleges that OmniMax became GSW's successor to the Dealer Contract. ECF No. 35 at ¶¶ 16, 19. However, on September 1, 2022, in a letter sent by Plaintiff's counsel, referenced in the amended complaint as "Exhibit E," HP asserts that the Dealer Contract is between HP and Euramax. *Id*. at ¶¶ 50-51; ECF No. 35-5. In an email dated October 26, 2022, Euramax, in response to HP's letter, implicitly or explicitly accepts being bound by the Dealer Contract, although disputing airtight exclusivity claims among other matters. ECF No. 35-6. When "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings," thereby giving the court the discretion to consider such additional material. *Newman v. Lehman Brothers Holdings Inc*., 901 F.3d 19, 26 (1st Cir. 2018). Thus, taking into account the September 1, 2022 letter, the October 26, 2022 email, and the amended complaint as a whole, a reasonable inference can be made that claims are being presented against both OmniMax and Euramax as principals to the Dealer Contract. Therefore, hereinafter OmniMax and Euramax will be jointly referred to as "Principal" (as the first paragraph of the complaint alleges), despite the arguably internal inconsistencies in the pleadings of the amended complaint as to whether more than one corporate entity is GSW's successor to the Dealer Contract.

including, but not limited to, advertising, promotions, customer service, and general purchasing and distribution practice, have led to increased demand and increased revenues for the Products in the Puerto Rico market. *Id*. at ¶¶ 23–25. As a result of these efforts, Plaintiff has "created a substantial and healthy market and goodwill for the Products." *Id*. at ¶¶ 21–22. Plaintiff's clientele for the Products in Puerto Rico includes local hardware stores, retailer-owned wholesale hardware cooperatives such as True Value, Ace Value, Orgill, Do it Best, national retail home improvement chains such as Home Depot, and other smaller retailers. *Id*. at ¶ 27.

In or about June of 2022, one of HP's sales representatives discovered that the Products were being supplied and sold in Puerto Rico by True Value and Ace, who purchased the Products from the Principal. *Id*. at ¶¶ 41-42. The Principal had knowledge that True Value and Ace served as wholesalers and/or distributors of hardware goods, including the Products, to their partners and/or affiliate stores in Puerto Rico. *Id*. at ¶ 53. True Value and Ace also had knowledge of Plaintiff's exclusivity rights as wholesaler of the Products in Puerto Rico. *Id*. at ¶ 71.

Plaintiff learned that the Principal was offering True Value and Ace preferential pricing of the Products. *Id*. at ¶ 56. The Principal sold the Products to True Value and Ace at a cost below the prices simultaneously quoted and sold to Plaintiff for identical commodities, allowing True Value and Ace to offer lower quotations than Plaintiff to local retailers.[3] *Id*. at ¶¶ 57-58. True Value and Ace serve over 30 local partners and/or affiliate stores in Puerto Rico, who are also clients of Plaintiff for the Products. *Id*. at ¶ 54. The number of True Value and Ace partners and/or affiliate stores in Puerto Rico has grown in the last couple years and continues to do so. *Id*. at ¶ 55. As a

---

[3] For example, Ace retailers in Puerto Rico are purchasing an Euramax gutter product identified as TO511J at a price which is 31% less than the price currently offered by the Principal to Plaintiff, and purchasing another product identified as TO519J at a price difference of 74% below the price currently offered by the Principal to Plaintiff. *Id*. at ¶¶ 61, 63.

3

result of True Value and Ace's sale of the products in Puerto Rico and the Principal's preferential pricing, Plaintiff has lost business and suffered economic harm. *Id*. at ¶¶ 59-60.

After learning this information, on June 28, 2022, Plaintiff sent an email to OmniMax bringing to its attention what HP believed to be violations of the Dealer Contract. *Id*. at ¶ 45. Plaintiff requested OmniMax to take the necessary steps to end the sale of the Products to Puerto Rico stores by True Value and Ace, as well as to be informed on what actions Euramax was taking to protect HP's exclusivity. *Id*. On July 13, 2022, OmniMax responded by email acknowledging the existence and validity of the Dealer Contract and informing Plaintiff that it has a business relationship with True Value and Ace in the continental United States and has no control over how these entities then distribute the Products to other dealer groups or to their stores in Puerto Rico. *Id*. at ¶ 46. Plaintiff replied on July 19, 2022, requesting that the Principal communicate with True Value and Ace "regarding [Plaintiff's] exclusive distribution agreement for the Euramax line, and demand that they cease all transactions that result in direct or indirect Euramax sales in Puerto Rico." *Id*. at ¶ 48. The Principal did not respond. *Id*. at ¶ 49.

On September 1, 2022, Plaintiff sent a letter to Euramax discussing the obligations under the Dealer Contract and demanding that Euramax "[i]mmediately take all necessary steps for any third party including, but no[t] limited to [True Value and Ace, among others], to cease and desist from offering for sale and/or selling the Products in Puerto Rico"; and to "[s]pecify what additional measures are to be taken by Euramax to prevent Hardware Plus from incurring into further economic loss." *Id*. at ¶ 51. Euramax responded on October 26, 2022, through counsel, rejecting any affirmative duty to act or prevent purchases outside of Puerto Rico by continental United States wholesalers which might also have stores in Puerto Rico, like True Value and Ace do. *Id*. at ¶ 52.

4

### III.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

True Value moves for dismissal of Plaintiff's amended complaint on grounds that Plaintiff cannot meet the $75,000 threshold amount required under the law. *See* 28 U.S.C. § 1332(a). The party invoking diversity jurisdiction bears the burden of establishing that the amount-in-controversy requirement is satisfied. *See Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004). The test for determining whether a party has met the amount-in-controversy requirement states that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). In other words, "jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the jurisdictional amount if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount." *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 4 (1st Cir. 2011) (citing *Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 4-8 (1st Cir. 1995); *Jimenez Puig v. Avis Rent-A-Car System*, 574 F.2d 37, 40 (1st Cir. 1978)). A plaintiff's "general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court." *Stewart*, 356 F.3d at 337. However, once the opposing party questions the amount, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Id*.

Here, Plaintiff pleaded the requisite amount in controversy, which True Value has challenged on the basis that the appropriate measure of damages for a tortious interference claim under Puerto Rico's general tort statute are loss of profits, not loss of revenue, and therefore,

Plaintiff's damages fall below the jurisdictional value of $75,000.[4] ECF No. 43 at 7-8 (citing *Pina v. Rivera*, 2014 WL 12749230, at *5 (D.P.R. Mar. 12, 2014); *see also* 31 L.P.R.A. § 5141. Specifically, True Value argues that "to a legal certainty, [Plaintiff's damages] fall well below the jurisdictional value of $75,000" because True Value has only sold $58,224.90 worth of the Products in Puerto Rico. ECF No. 43 at 7; ECF No. 55 at 4. True value further contends that "[e]ven if one were to assume that [P]laintiff would have made all those sales in the absence of True Value, and even assuming that its net profit would have been 100% of those sales," Plaintiff's damages still fall well below the jurisdictional value. ECF No. 43 at 7. Thus, because True Value challenged HP's amount in controversy, the burden now shifts to Plaintiff to allege facts indicating that it is not a legal certainty that the claim involves less than the required amount in controversy. *See Abdel-Aleem v. OPK Biotech, LLC*, 665 F.3d 38, 42 (1st Cir. 2012).

Here, Plaintiff has not provided the Court with enough information to meet its burden. True Value has asserted that it has only sold $58,224.90 worth of the Products in Puerto Rico. ECF No. 43 at 7; ECF No. 55 at 4. HP does not provide the Court with any information to refute this number, or any information to show how much higher their profits would be if True Value did not sell the Products, how much higher HP would have sold the Products for as compared to True Value's prices, or even any information to assess whether HP would have sold the same amount (or more) of the Products. Instead, HP simply argues that it has alleged in good faith that the amount in

---

[4] Defendant True Value cites to Puerto Rico Supreme Court cases that have not been translated to support its contention that compensable damages in lost profits refers to lost net profit, not gross income. *S.L.G. Rodriguez v. Nationwide*, 156 D.P.R. 614, 623 (2002); *Coqui Landfill v. Mun. Gurabo*, 186 D.P.R. 688 (2012); *Venrod Trading Co, Inc. v. Able Sales Co, Inc.*, 2018 WL 4488393, at *14 (P.R. Cir. July 31, 2018). "Where a party makes a motion ... based on a decision that was written in a foreign language, the party must provide the district court with and put into record an English translation of the decision." *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008). Moreover, Local Rule 5(g) requires all documents not in the English language that are presented or filed in the District Court of Puerto Rico must be accompanied by a certified English translation. Loc. R. 5(g). In light of the defendants' failure to provide the English translation of various Puerto Rico Supreme Court cases, the Court may not consider them in its analysis. *See Dalmau*, 544 F.3d at 67.

controversy exceeds $75,000 and further that it easily meets the jurisdictional value when attorneys' fees, costs, injunctive relief, and future damages are taken into consideration. ECF No. 44 at 6-7. While HP does allege in the amended complaint that its sales have decreased 12-21% since 2022, these percentages do not necessarily translate to dollar amounts without knowing how many units and at what price they sold in 2022, or even the profit margin on those sales. ECF No. 44 at 8 (citing ECF No. 35 at ¶ 122). Moreover, because Plaintiff's damages are limited to lost profits, not loss of revenue, this is insufficient to show that it is not a legal certainty that the claim involves less than the required amount in controversy. *Abdel-Aleem,* 665 F.3d at 42. Thus, Plaintiff did not meet its burden.

HP also argues that it easily meets the jurisdictional value when attorneys' fees, costs, injunctive relief, and future damages are taken into consideration. *Id*. First, Plaintiff's argument that attorneys' fees and costs should be included is incorrect. Section 1332(a) clarifies that the jurisdictional amount of $75,000 is "exclusive of interest and costs…" 28 U.S.C. § 1332(a). Second, "[n]ormally, attorney's fees are excluded from the amount-in-controversy determination;" however, "[t]here are two exceptions to this rule: when the fees are provided for by contract, and when a statute mandates or allows payment of the fees." *Spielman v. Genzyme Corp.,* 251 F.3d 1, 7 (1st Cir. 2001). Neither exception applies to the case at bar, as the contract does not provide for such fees and Puerto Rico's general tort statute does not mandate or allow payment of the fees. P.R. Laws Ann. tit. 31 § 10801. Third, while damages may continue up to litigation, these future continuing damages are speculative as HP does not provide any numbers, itemizations, or estimates. Lastly, regarding injunctive relief, "the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted." *Spielman*, 351 F.3d at 4 (internal citations omitted). Here, HP requests that the Court enjoin True Value from selling the Products to customers in Puerto Rico; therefore, the value would be the

7

profits that Plaintiff would receive from sales of the Products in Puerto Rico in the absence of True Value. Plaintiff, however, does not provide any data to dispel any speculation from an estimate of how much those sales would be. In view that Plaintiff does not provide enough information on this point to dispute True Value's claim that the damages are less than $75,000, True Value's motion to dismiss on this ground is GRANTED. The claim against True Value is accordingly DISMISSED WITHOUT PREJUDICE.

    **IV.**    **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

    **A. Applicable Legal Standard**

A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Such a task requires a two-pronged analysis. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "Similarly, a court does not accept as true allegations that while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (internal quotations omitted). In short, "to avoid dismissal, the plaintiff must

8

provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting *Twombly*, 550 U.S. at 555, 570).

"Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim of relief." *Air Sunshine, Inc.*, 663 F.3d at 33. In making this determination under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint and "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). In addition to the complaint, the court can consider "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" *Schatz*, 669 F.3d at 55 (quoting *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)). "We appropriately draw on our 'judicial experience and common sense' in evaluating a complaint, but we may not disregard factual allegations 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. *Id*.

### B. Analysis

The only remaining claim is against Ace for tortious interference, which Ace moves to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and, in the alternative, because the claim is time barred. ECF No. 85. Plaintiff argues that its claim

is legally sufficient to establish a cause of action for tortious interference and that the claim is not time barred. ECF No. 100. Each argument is addressed separately.[5]

### 1. Failure to Plead Knowledge and Intent

A cause of action for tortious interference with a contractual relationship arises under Article 1536 of the Puerto Rico Civil Code.[6] *Gen. Office Prod. Corp. v. A.M. Capen's Sons, Inc.*, 115 P.R. Dec. 553, 558 (1984). In order to prevail on a tortious interference claim, a plaintiff must establish "(1) that a contract exists, (2) that the defendant interfered with that contract, (3) fault on the part of the defendant, (4) damage to the plaintiff, and (5) a nexus between the defendant's fault and the plaintiff's damage." *Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV*, 828 F. Supp. 2d 425, 433 (D.P.R. 2011); *New Comm Wireless Servs. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002); *Gen. Office Prods. Corp.*, 115 PR Dec. at 558.

True Value and Ace argue that Plaintiff does not adequately plead fault. ECF No. 43 at 10-12; ECF No. 85 at 8-9. Under Puerto Rico law, "the 'fault' element of tortious interference requires a stronger showing" than the other elements. *New Comm Wireless Servs.*, 287 F.3d at 10. Specifically, "[t]he fault element requires that the defendant's interference be intentional and with knowledge of the contract's existence." *Alpha Biomedical*, 828 F. Supp. 2d at 433 (citing *New Comm Wireless Servs.*, 287 F.3d at 10; *Figueroa v. Walgreens of San Patricio, Inc.*, 155 DPR 560 (2001)). However, the prejudiced party need only show or present facts allowing the court to infer that the third person has acted tortiously. *Gen. Office Prods. Corp.*, 115 PR Dec. at 558-59.

---

[5] Although the claims against True Value have been dismissed, the analysis that ensues applies equally to both True Value and Ace.

[6] Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. PR Laws Ann. tit. 31 § 10801. However, Articles 1802 and 1536 have provisions that "are extremely similar and thus can be used interchangeably." *Orellano-Laureano v. Instituto Médico del Norte, Inc.*, 2023 WL 4532418, at *6 n.5 (D.P.R. July 13, 2023). Courts in this district accordingly apply caselaw analyzing Article 1802 to claims arising under Article 1536. *See e.g.*, *Dumanian v. FirstBank P.R.*, 2024 WL 197429, at *3 n.4 (D.P.R. 2024).

HP has sufficiently pleaded that True Value and Ace had knowledge of the Dealer Contract. First, HP specifically alleges that True Value and Ace had "knowledge" of the Dealer Contract and that they were "fully aware" of the exclusive distribution relationship between the Principal and Plaintiff. ECF No. 35 at 12, ¶¶ 70-72, 135. Further, knowledge can reasonably be inferred based on allegations that (1) Plaintiff has had an exclusive contract for the Products for the past thirty years and is among the largest local wholesale distributors of gutter products in Puerto Rico, (2) that True Value and Ace, after doing business in Puerto Rico for 10 years, had insight into the market and thus, knowledge of HP's exclusive distribution rights under the Dealer Contract, and (3) that True Value and Ace supplied products to over 30 stores in Puerto Rico who are also clients of Plaintiff for the Products. ECF No. 35 at ¶¶ 21-37, 54, 136, 140; *see also Air-Con, Inc. v. Daikin Applied Latin America LLC*, 2016 WL 4991513, at *5 (D.P.R. Sept. 19, 2016) (finding that the plaintiff sufficiently pled knowledge based on similar allegations). Thus, it can reasonably be inferred that True Value and Ace had knowledge of the Dealer Contract and Plaintiff's exclusive rights therein. *Gen. Office Prods. Corp.*, 115 PR Dec. at 558-59.

It can also reasonably be inferred from the pleadings that True Value and Ace acted with intent to interfere with the Dealer Contract. In *Air-Con, Inc.*, 2016 WL 4991513, at *5, the court found "fault" based on allegations of an exclusive distribution agreement, allegations that the plaintiff had invested millions of dollars in advertising campaigns, marketing, and sales efforts to create public recognition of the product in Puerto Rico, and allegations that the third party had taken "undue advantage of the efforts that Air-Con had made during the past 15 years" in Puerto Rico. *Id*. Here, HP alleges that the Principal, True Value, and Ace acted "in concert" to breach and circumvent the exclusivity rights of Plaintiff and that True Value and Ace have appropriated Plaintiff's clientele and the goodwill it created for the Products. ECF No. 35 at ¶¶ 70-72. HP further alleges that True Value and Ace have taken "undue advantage of the efforts that [Plaintiff] has

11

made during the past 30 years to create a solid market for the Products in Puerto Rico." *Id*. at ¶ 130. Reading the complaint as a whole, instead of "demanding a one-to-one relationship between any single allegation and a necessary element of the cause of action," Plaintiff sufficiently pleaded a plausible tortious interference claim against True Value and Ace. *Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 18 (1st Cir. 2016) (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013)).

Moreover, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Johnson v. Institucion Correcional Sabana Hoyos*, 2017 WL 3610496, at *3 (D.P.R. Aug. 22, 2017) (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (internal citations omitted).

### 2. Time-Barred

Next, True Value and Ace argue that HP's tortious interference claim is time barred because the statute of limitations started to run in June of 2022 when, according to Plaintiff's amended complaint, HP discovered that the Products were being supplied and sold in Puerto Rico by multiple Ace cooperative members, partners, and/or affiliated stores. ECF No. 35 at ¶ 41; ECF No. 35-2. Yet, Plaintiff filed its complaint more than a year later, on August 3, 2023. ECF No. 85 at 10-11. Plaintiff accepts that in late June of 2022 it learned that True Value and Ace retail stores were selling the Products. However, Plaintiff argues that "the *identity* of the tortfeasor, the *how,* and the *who* was supplying the *Products* to these stores was not discovered until later." ECF No. 100 at 8 (emphasis in original). Alternatively, Plaintiff argues that Ace's actions are continuous in nature as they continue to distribute the Products in Puerto Rico and thus, the "continuing violation" doctrine applies to toll the statute of limitations. ECF No. 35 at ¶ 142; ECF No. 85 at 10-17.

Under Puerto Rico's general tort statute, a claim is "subject to a one-year limitations period, which begins to run 'from the time the aggrieved person had knowledge' of the harm". *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 856 (1st Cir. 2016) (quoting *Rodríguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997); *Colón Prieto v. Géigel*, 15 PR Offic. Trans. 313, 331 (1984)). Puerto Rico's Supreme Court recognizes two types of "knowledge" as sufficient to start the clock. First, a plaintiff may have "actual knowledge of both the injury and of the identity of the person who caused it." *Alejandro–Ortiz v. Puerto Rico Elec. Power Authority (PREPA),* 756 F.3d at 27; *see also Rodríguez–Surís,* 123 F.3d at 13–14. The one-year period begins to run on the date a plaintiff gains this knowledge. *See Alejandro–Ortiz,* 756 F.3d at 27. Alternatively, a plaintiff "is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action." *Id.* The test for this so-called "deemed knowledge" is an objective one. *Id.* Under Puerto Rico law, deemed knowledge "is essentially parlance for the discovery rule, which stands for the proposition that '[t]he one-year [statute of limitations] does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit.'" *Rivera-Carrasquillo v. Centro Ecuestre Madrigal*, 812 F.3d 213, 216 (1st Cir. 2016) (citing *Alejandro–Ortiz,* 756 F.3d at 27). "In other words, the statute of limitations begins running at the time a reasonably diligent person would discover sufficient facts to allow her to realize that she'd been injured and to identify the party responsible for that injury." *Id*.

Since June of 2022, HP had knowledge of True Value and Ace's identities and the injury it suffered. In an email dated June 28, 2022, Plaintiff wrote to OmniMax that it had discovered "an unlawful distribution of Products in the territory" and identified the stores that were buying the items as "True Value and Ace." ECF No. 35 at ¶ 45; ECF No. 35-2. The email further informed that True Value and Ace were buying the Products at reduced prices and that HP was suffering

13

economic losses due to a reduction in sales. ECF No. 35-2. It is clear from these emails that Plaintiff had "actual knowledge of both the injury and of the identity of the person who caused it." *Alejandro–Ortiz v. Puerto Rico Elec. Power Authority (PREPA)*, 756 F.3d at 27; *see also Rodríguez–Surís,* 123 F.3d at 13–14. Moreover, OmniMax responded, in a July 13, 2022 email, explicitly stating that they have a relationship in the continental U.S. where they sell products to "True Value and ACE." ECF No. 35-3. On July 19, 2022, Plaintiff replied stating that:

> We would like to note that the circumstances as to how these groups, such as ACE [and] True Value… obtain the products are the same circumstances that abide to Home Depot and to all other customers in Puerto Rico territory. This means, that regardless of how these groups manage to get the product in Puerto Rico, we have exclusivity over the territory…Accordingly, we request for you to communicate with these groups regarding our exclusive distribution agreement for the Euramax line, and demand that they cease all transactions that result in direct or indirect Euramax sales in Puerto Rico.

ECF No. 35-4. Plaintiff's reply further shows its awareness of the identity of True Value and Ace and of the specific injury caused by them.

However, even if the claims are time barred, they may survive under the "continuing violation" doctrine or as a "continuous tort" which, in general terms, creates "an equitable exception to the statute of limitations because it allows for recovery for claims filed outside of the statutory period when the unlawful behavior is deemed ongoing." *Centro Médico Del Turabo, Inc. v. Feliciano De Melecio*, 321 F.Supp.2d 285, 291 (D.P.R. 2004) (citing *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998). The continuing violation doctrine had its "genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, [but] it has been applied to other contexts." *Velázquez v. Chardón*, 736 F.2d 831, 833 (1st Cir. 1984); *see also Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 206 (1st Cir. 2015) (collecting cases). However, the Puerto Rico Supreme Court has not specifically recognized

14

application of the continuing violation doctrine in cases involving tortious interference.[7] *See Cacho González v. Santarrosa*, 203 DPR 215, 225-26 (2019) (refusing to extend the doctrine to the defamation context, noting that it has only been applied in Puerto Rico to cases involving nuisance, domestic violence, and hostile work environment); *see* ECF No. 92-1 for a certified translation.

There is, however, precedent applying the continuing violation doctrine to the tortious interference context. In *V.W.F. Corp. v. Capital Housing Partners CLXII*, 2007 WL 1437503, at *5 (D.P.R. May 11, 2007), the court asked whether plaintiffs sufficiently pled that "(1) the one act that took place within the prescription period constituted an unlawful act and (2) that it was part of a series of unlawful acts." *Id.* (citing *Bonilla v. Trebol Motors Corp.,* 913 F.Supp. 655, 659–60 (D.P.R. 1995); *see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 7 (1st Cir. 2005). The *V.W.F.* court found that plaintiff's allegations satisfied both elements. *Id.* Ace urges this court not to follow *V.W.F.*, which in its view conflicts with *Padró v. Fed. Deposit Ins. Corp.*, 2012 WL 12995700, at *5 (D.P.R. Sept. 28, 2012). ECF No. 115 at 11. While the court's citations in *V.W.F.* are not to cases of tortious interference, the court clearly applied those standards to the tortious interference context and asked whether the plaintiff's allegations sufficiently pled a continuing violation. The court in *Padró* did not contradict that reasoning; instead it simply just found that plaintiff's characterization of the tort did not arise to the level of a continuous tort. *Padro*, 2012 WL 12995700, at *5 ("[T]he Court finds no merit in Plaintiffs continuous tort claims. The Court does not understand that this was a continuous tort and believes that to characterize the alleged contractual interference as a continuous tort would be disingenuous.").

---

[7] Although not binding authority, courts in other jurisdictions have similarly been hesitant to apply the doctrine to the context of tortious interference. *See e.g.*, *Vitek v. AIG Life Brokerage*, 2008 WL 4372670, at *10 n.9 (S.D. Ohio Sept. 22, 2008); *Corp. Auto Res. Specialists v. Melton Motors, Inc.*, 2005 WL 1028225, at *4 (E.D. Mich. Apr. 19, 2005); *DC Comics v. Pacific Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013).

Moreover, Plaintiff does not merely allege continual ill effects or continuing damages from the original tortious interference, but instead specifically alleges that Ace is continuing to tortiously interfere by selling the Products in Puerto Rico. ECF No 35 at ¶ 141; *see also Bonilla*, 913 F.Supp at 659 (finding that it is it is irrelevant whether the harm allegedly caused by the tortious acts continues.). In other words, Plaintiff sufficiently pleads allegations to support a continuous tort, which should not be confused with the injury it produces, as a "continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."[8] *McMillan V. Rodriguez-Negron,* 511 F.Supp.3d 75, 83 (1st Cir. 2020) (quoting *Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659 (D.P.R. 1995)). Accordingly, Ace's motion to dismiss is DENIED.

## V.  CONCLUSION

For the foregoing reasons, True Value's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 43) is GRANTED and Ace's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 85) is DENIED. Accordingly, the claims against True Value are DIMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of May, 2025.

s/Marcos E. López
U.S. Magistrate Judge

---

[8] The difference between a continuous tort/continuing violation and continuing damages was explained in *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410 (2016); *see* ECF No. 44-1 for a certified translation. The court in *Rivera Ruiz* defined a "continuous tort" as "a continued, or uninterrupted, disturbance of unlawful acts or omissions which cause foreseeable lasting damages." *McMillan v. Rodríguez-Negrón,* 511 F.Supp.3d 75, 83 (1st Cir. 2020). "Since the tortfeasor's illegal acts are continuous, the cause of action continually renews itself, for the statute of limitation purposes, until the tortfeasor ceases his harmful conduct." *Id*. However, this is not the same as continuing damages. "[A] continuous tort should not be confused with the injury it produces." *Id*. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Bonilla*, 913 F.Supp at 659.