**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

HARDWARE PLUS, INC.,

    Plaintiff,

      v.                                                     Civil No. 23-1394 (MBA)

OMNIMAX INTERNATIONAL, LLC, et al.,

    Defendant.

**OPINION AND ORDER**

Pending before the Court is Codefendant Ace Hardware International's ("Ace") Motion for Reconsideration under Federal Rule of Civil Procedure 59(e). (ECF No. 155). For the reasons outlined below, Ace's motion for reconsideration is **DENIED.**

**BACKGROUND**

On May 15, 2025, this Court issued an Opinion and Order (ECF No. 149) denying Ace's Motion to Dismiss. (ECF No. 85). The Court ruled that plaintiff Hardware Plus, Inc.'s ("Plaintiff" or "HP") tortious interference claim against Ace is not time-barred because HP had sufficiently pled allegations to support a continuing violation. (ECF No. 149 at 14-16). Specifically, the Court noted that Plaintiff "does not merely allege continual ill effects or continuing damages from the original tortious interference, but instead specifically alleges that Ace is continuing to tortiously interfere by selling the Products in Puerto Rico." (*Id.* at 16). On June 12, 2025, Ace timely filed a motion for reconsideration. (ECF No. 155). HP opposed. (ECF No. 163).

**LEGAL STANDARD**

"The Federal Rules of Civil Procedure do not specifically recognize a 'reconsideration'

1

mechanism. Instead, parties usually resort to either Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b)." *Tolbert v. Cooperative de Seguros Multiples de P.R.*, 2025 U.S. Dist. LEXIS 131343, *2, 2025 WL 1891812 *1 (D.P.R. July 9, 2025). Such a motion may be granted when there has been "an error not of reasoning but apprehension." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022) (cleaned up). Moreover, the grounds for relief are extremely limited, essentially encompassing only those situations where there has been an intervening change in the controlling law, a clear legal error, or newly discovered evidence. *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 723-24 (1st Cir. 2014); *Soto-Padró v. Public Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012); *United States v. Peña-Fernández*, 394 F. Supp. 3d 205 (D.P.R. 2019). Because of that, these motions "should be used sparingly," *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990), and are "typically denied." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 128 (2d ed. 1995). *See e.g., Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (holding that a rule 59(e) motion is "normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected."). Courts enjoy considerable discretion in deciding a Rule 59(e) motion. *Carrero-Ojeda*, 755 F.3d at 723; *Soto-Padró*, 675 F.3d at 9.

Additionally, and pertinent here, a party may not rely on Rule 59(e) "to raise arguments which could have been raised prior to the issuance of the judgment." *Pac. Ins. Co. v. Am. Nat'l. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *Trabal Hernandez v. Sealand Servs. Inc.*, 230 F. Supp. 2d 258, 259 (D.P.R. 2002). Nor may it use it "to repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co.*, 899 F.2d at 123. Simply put, Rule 59(e) does not permit a party to turn back the clock and try to reinvent its case with the benefit of hindsight after an adverse judgment has been entered. *See Aybar v. Crispin-Reyes*, 118 F.3d 10, 16-17 (1st Cir. 1997) (finding district court did not abuse its discretion in denying appellants' motion for reconsideration despite being led to a mistake of fact when appellants' withheld that information in their earlier filings); *Vasapolli v. Rostoff*, 39 F.3d

27, 36 (1st Cir. 1994) (similarly rejecting a party's attempt to introduce relevant, previously known information after judgment had been entered).

## DISCUSSION

Ace has failed to present any new argument in the motion for reconsideration or any argument it could not have made before. Ace claims that the Court "failed to apply" two First Circuit cases, *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849 (1st Cir. 2016) and *Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200 (1st Cir. 2015). (ECF No. 155 at 2-4). Yet that is simply not the case. While both cases were cited in Ace's original motion to dismiss, they were not cases Ace identified as controlling. In fact, Ace cited *Flovac* once for the one-year statute of limitations. (ECF No. 85 at 9). A Rule 59(e) motion is not the time to debut new arguments. Moreover, while *Flovac* was a tortious interference case, the injury emanated from a single instance. *Flovac*, 817 F.3d at 856. The First Circuit determined Flovac could not rely on the allegation that damages (and not violations) continued to toll the limitations clock, characterizing the argument as "nothing more than magical thinking." *Id.* at 857. Unlike in *Flovac*, here HP alleges not just continuing damages, but continuing violations. In its Opinion and Order, the Court made this key distinction. (ECF No. 140 at 16) ("Plaintiff does not merely allege continual ill effects or continuing damages from the original tortious interference, but instead specifically alleges that Ace is continuing to tortiously interfere by selling the Products in Puerto Rico."). Therefore, the Court did not misapply *Flovac*.

While Ace did cite to *Quality Cleaning Products* a handful of times, it did so in regards to the continuing violations doctrine in general and statements therein that the Puerto Rico Supreme Court was "unlikely to apply the continuing violation doctrine to [Law] 75 claims." (*Id.* at 15, 18). Ace thus waived the arguments it now makes. If more were needed, Ace has failed to show the Court misapplied the law. As explained by the First Circuit in *Quality Cleaning Products*, the Puerto Rico Supreme Court's "apparent resistance" to extend the continuing violations doctrine to breach of contract cases "makes

sense," after all, "[u]nlike a prolonged series of wrongful acts, a contract breach is a single, readily ascertainable event." 794 F.3d at 206. Unlike *Quality Cleaning Products*, this case involving a tortious interference claim and allegations of continuous conduct. And *Quality Cleaning Products* recognized that "application of the continuing violation doctrine is cabined to certain civil rights or *tort actions*." *Id.* (emphasis added). This is such a case.

In an effort to prove its point, Ace next cites to Puerto Rico's Supreme Court's decision in *B.W.A.C. Int'l v. Quasar Co.*, 38 PR Offic. Trans. 10 (1995) (ECF No. 155-1), a Law 75 case where the plaintiff alleged the business relationship had been unilaterally terminated without just cause and included a tortious interference claim. But again, as pointed out by HP, the interference came from a single identifiable event. As stated in the Court's Opinion, the defendant had taken away the dealership from plaintiff and awarded exclusive dealership to a third party. (ECF No. 155-1 at 16). From then on, all that continued was damage from that single event. (*Id.*). Nothing in *B.W.A.C.* stands for the proposition that continuing violations cannot toll the statute of limitations.

Aces's reliance on *Padró* fares no better. *Padró v. Fed. Deposit Ins. Corp.*, No. CV 10-2041 (JAG), 2012 WL 12995700 (D.P.R. Sept. 28, 2012). As discussed in the Court's Opinion and Order, Padró did not contradict V.W.F. (ECF No. 159 at 15). *V.W.F. Corp. v. Capital Housing Partners CLXII*, 2007 WL 1437503 (D.P.R. May 11, 2007). As such, the Court neither created nor contributed to a split. And Ace cannot get around its failure to seek certification earlier. "Whatever may be the purpose of rule[s] 59(e) [59(a), and 50(b),] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Illinois central Gulf Railroad Co. v. Tabor Grain Co.*, 488 F. Supp. 110, 122 (N.D. Ill. 1980). The result would be that "some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995).

Finally, in the absence of binding Supreme Court case law, Ace directs the Court's attention to Puerto Rico Court of Appeals caselaw it believes to be on point. (ECF No. 155 at 8-9). Specifically,

4

ACE points to *Triple S Propiedad, Inc. v. Praxis Associate, Inc.*, 2013 WL 1741950 (2013) (ECF No. 162-1). It is hard to see how this case alters the mix. As stated by the Court of Appeals, "the alleged conduct of Triple S Property and its officers occurred on July 1, 2009, date in which the agency contract was canceled and in that Praxis sold its business portfolio." (*Id.* at 7). There simply were no concrete allegations that the contractual breach involved continuing violations.

Puerto Rico Court of Appeals caselaw is instructive, however, and there is at least one case that supports this Court's earlier Opinion. In *Healthy Air Masters, Inc. v. Motopac Corp.*, 2024 PR App. LEXIS 2885, 2024 WL 5152889 (Nov. 21, 2024),[1] a Puerto Rico Court of Appeals dealing with a Law 75 exclusive dealership scenario held that "a new statute of limitations would start running from the moment in which the impairment actions of the subsisting relationship took place." *Id.* at *37. The Court went on to explain that "[f]ailing to consider the actions taken after notification of the termination of the exclusive business relationship would undermine the purposes set forth in Law 75, to the detriment of the local dealers who, through their business activities, have succeeded in establishing a market, while allowing abusive practices by the principal." *Id.* at *38. And it added that "it would be improper to talk about start of the statute of limitations due to impairment of the exclusivity until the **definitive termination** of the relationship or until **any other impairment** of that relationship occurs, depending on the particular circumstances of each case." *Id.* at *37 (emphasis in original). This makes sense and serves to prevent injustice. A contrary ruling would grant immunity to tortious interference simply because a first act was insufficient to trigger a lawsuit. As observed by the First Circuit, the continuing violations "doctrine allows a lawsuit to be delayed in cases — such as hostile work environment claims — in which a course of 'repeated conduct' is necessary before 'a series of wrongful acts blossoms into an injury on which suit can be brought.'" *Quality Cleaning Prods.*

---

[1] A certified translation to the cited excerpt is attached to this Opinion.

*R.C.*, 794 F.3d at 205 (quoting *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015)). This much was recognized by the Puerto Rico Supreme Court in *Cacho González v. Santarrosa*, 203 D.P.R. 215, 225 (2019) (ECF No. 92-1). Following the Ninth Circuit's decision in *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002), it stated "the continuing tort doctrine applies where there is no 'single incident' that can fairly or realistically be identified as the cause of significant harm." *Id.* (quoting *Flowers*, 310 F.3d at 1126). The doctrine's application to Ace's continued selling of the products—prices which range from under a dollar to a little over \$3— despite HP's alleged exclusivity clause prevents rather than creates injustice.

**CONCLUSION**

For the aforementioned reasons, Ace's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico this April 21, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge